UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RON YOUNG and DONNA YOUNG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  3:09cv136 |
| | ) | |
| DIGGER SPECIALTIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant,

Digger Specialties, Inc. ("Digger"), on June 4, 2010.  The plaintiffs, Ron Young ("Mr. Young")

and Donna Young ("Mrs. Young"), filed their response on July 19, 2010, to which Digger

replied on August 19, 2010.

For the following reasons the motion will be granted.

Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56©. Rule 56© further requires the entry of summary

judgment, after adequate time for discovery, against a party "who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The court must consider the evidence as a jury might, "construing the record in the light most

favorable to the nonmovant and avoiding the temptation to decide which party's version of the

facts is more likely true." <u>Shepherd v. Slater Steels Corp.</u>, 168 F.3d 998, 1009 (7th Cir. 1999);

<u>see also</u> <u>Payne v. Pauley</u>, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often-stated proposition

that "summary judgment cannot be used to resolve swearing contests between litigants"). The

court may not grant summary judgment "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986) .

Discussion

Digger is a fabricator and manufacturer of vinyl fencing, railing, and decking as well as a

manufacturer of powder coated aluminum railing and fence products.  Digger also fabricates and

manufactures vinyl and aluminum accessories and custom projects.  Fencing is a seasonal

industry and Digger was in the practice of hiring employees in the spring and laying them off in

the fall.

The Youngs were hired at Digger on March 10, 2000 and were laid off in September of

2007.  Mr. Young was 77 years old at the time he was laid off, and Mrs. Young was 59 years

old. The Youngs volunteered to be laid off, to save other people from getting laid off.  Digger

expected to rehire the Youngs on April 1, 2008.  However, according to Digger, the economic

downturn and resultant slow housing market prevented Digger from hiring back all of its laid off

employees in the spring of 2008, and the Youngs were not rehired.  As a result, the Youngs filed

suit against Digger, alleging violations of Title VII, § 1981 and the ADEA.  The Youngs claim

they were discriminated against based on their age, race/ethnicity (non-Amish), and religion

(non-Amish).  The Youngs further assert state law claims for breach of express contract,

promissory estoppel, and negligent misrepresentation.

As to their federal claims, the Youngs can offer direct proof of discriminatory intent, or they can rely on the indirect, burden-shifting approach as delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Bruno v. City of Crown Point, Ind., 950 F.2d 355, 361 (7th Cir. 1991). Under the McDonnell Douglas framework, the Youngs first must establish by a preponderance of the evidence a prima facie case of discrimination, which creates a presumption that Digger unlawfully discriminated against the Youngs. Helland v. Sough Bend Comm. Sch. Corp., 93 F.3d 327, 329 (7th Cir. 1996). To establish a prima facie case of discrimination, the Youngs must show that (1) each was a member of a protected class; (2) each met Digger's legitimate job expectations; (3) each suffered an adverse employment action; and (4) similarly situated employees outside their protected class received more favorable treatment. Lucus v. PyraMax Bank, FSB, 539 F.3d 661, 666 (7th cir. 2008). If the Youngs establish a prima facie case, then the burden shifts to Digger to produce evidence which, if taken as true, would permit the conclusion that it had a legitimate, non-discriminatory reason for its challenged employment action. Helland, 93 F.3d at 329. The Supreme Court has held that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). If Digger meets this burden, then the Youngs must prove by a preponderance of the evidence that the legitimate reasons offered by Digger were not its true reasons, but were a pretext for discrimination. Reeves, 530 U.S. at 148; Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008). To prove pretext, the Youngs must

show that Digger did not honestly believe in the reasons it gave for not rehiring them.  Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 876 (7th Cir. 2002).  "Pretext means a dishonest explanation, a lie rather than an oddity or an error."  Bodenstab v. County of Cook, 569 F.3d 651, 657 (7th Cir. 2009).  It requires proof that Digger's "explanation is unworthy of credence." Filar v. Board of Educ. of Chicago, 526 F.3d 1054, 1063 (7th Cir. 2008).

In support of their motion for summary judgment, Digger first argues that it is undisputed that it did not rehire the Youngs in the spring of 2008 for legitimate business reasons.  Digger further claims that it is undisputed that it decided not to rehire the Youngs based upon their past performance at Digger.

Under the ADEA, it is "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. §623(a)(1).  When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993); Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008).  "In other words, [the Youngs] must show that [their] age actually played a role in [Digger's] decision-making process and had a determinative influence on the outcome."  Faas, 532 F.3d at 641.

42 U.S.C. §1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... as is enjoyed by white citizens."  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq, provides that "[i]t shall be an unlawful employment practice for an employer ...

to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...religion...or national origin." 42 U.S.C. §2000e-2(a)(1). "An unlawful employment practice is established when a plaintiff demonstrates that a protected characteristic, [race...religion...or national origin], was a motivating factor for an employment decision. Hossack v. Floor Covering Assocs. of Joliet, Inc., 492 F.3d 853, 860 (7th Cir. 2007).

Digger states that as the spring of 2008 approached, Mr. Hellinga, Mr. Hochstetler, and Mr. Graber, all part of Diggers' management, discussed the need to cut back the workforce and discussed which employees would not be rehired. Digger argues that this was absolutely critical so that Digger could sustain its viability and continue to employ some individuals. Digger states that it was required to scrutinize its manpower and retain workers who were the most productive. Mr. Graber, the president of Digger, had the final decision and decided to not rehire the Youngs "based on their poor work performance and evident inefficiency."

Mr. Young was employed as a samples employee, and was the only samples employee for a time. He was required to build samples of Digger's products to send to customers for demonstrative purposes. However, over the course of his employment, Mr. Young had sent out the wrong samples to clients and jeopardized patronage of Digger. Mr. Young had also sent out damaged products with the same risk. Mr. Young had difficulty reading work orders correctly and had an inability to comprehend new work orders. He also refused constructive criticism of his supervisors who were trying to help him become more efficient. Over time, Mr. Young continued to prove inefficient in completing his tasks, often requiring assistance. Kristen Yoder was assigned to assist Mr. Young. Ms. Yoder assisted Mr. Young while maintaining her

position and carrying out her responsibilities in the vinyl gate cell. Taking all these things into consideration, Mr. Graber found Mr. Young to not be as efficient and productive a worker as was necessary for the vitality of the company. Mr. Graber also felt that Mr. Young's position could be absorbed into Ms. Yoder's position in the vinyl gate cell. Thus, the positions were consolidated and Mr. Young was not rehired. Mr. Graber has testified that he did not consider Mr. Young's age, race, religion or ethnicity in making his decision.

Mrs. Young was the only employee in the bagging department for a time. Over the course of her employment, she sent the wrong package parts to customers and other Digger plants causing lowered efficiency and lack of productivity. She would become fixated on one problematic task to the detriment of completing other necessary tasks to fill work orders. Mrs. Young proved inefficient and unproductive, often requiring assistance to complete her job responsibilities. Amanda Mejia was assigned to assist Mrs. Young. Ms. Mejia was a current employee at Digger at the time and worked in vinyl production with her own responsibilities. Based on the foregoing, Mr. Graber believed Mrs. Young was not an efficient and productive employee. Additionally, Mr. Graber believed that Mrs. Young's position could be absorbed into Ms. Mejia's vinyl production position, and thus the positions were consolidated. Mr. Graber has testified that he did not consider Mrs. Young's age, religion, race or ethnicity in his decision.

Mr. Hochstetler testified that he supported Mr. Graber's decision due to worry that the Youngs would package parts or build samples that were wrong and send them to customers. Mr. Hellinga also supported Mr. Graber's decision because the economic climate at the time necessitated downsizing of the vinyl production department.

In support of their age discrimination claim, the Youngs note that there is no dispute that

they are over age 40 and that they suffered an adverse employment action. The Youngs argue that they were meeting Digger's expectations and that younger individuals were treated more favorably.

With respect to their claim that they were meeting expectations, the Youngs point to evidence that Digger (in its termination letters) offered to write a letter of recommendation to both the Youngs. The termination letters do not mention poor work performance, attitude, reliability, past discipline, lack of flexibility, failure to carry out job duties, productivity, errors in workmanship, or any other inefficiencies leading up to their terminations. Rather, the termination letters express Digger's offer to write letters of recommendation and only mention the downturn in the economy as the reason for the termination.

The Youngs argue that letters of recommendation, coupled with consistent satisfactory performance reviews, can be enough to establish that they were meeting expectations. Johnson v. Zema, 170 F.3d 734, 743 (7th Cir. 1999). The Youngs point out that they received positive performance evaluations in the two most recent reviews before their termination, and that both the Youngs showed improvement from 2006 into 2007. On February 23, 2006, Mr. Hellinga, Mr. Young's direct supervisor, gave Mr. Young a rating of "meets all job requirements" on his Anniversary Performance Review. Out of eighteen categories, Digger only marked four as an "Improvement Opportunity." Mr. Young's 2007 review includes a commendation for making good vinyl samples, being on time, and having a good use of materials. Out of the eighteen categories, Digger only marked three as an area needing improvement. Mr. Young received a raise following this review. This is the most recent performance review prior to his termination.

With respect to Mrs. Young, on February 20, 2006, Mrs. Young's direct supervisor

7

awarded her a rating of "meets all job requirements" on her Anniversary Performance Review. Out of eighteen categories, Digger marked fifteen as "current strengths". On February 28, 2007, Mrs. Young's direct supervisor awarded Mrs. Young a rating of "meets all job requirements" on her Anniversary Performance Review. Out of the eighteen categories on her 2007 review, none were marked as an "improvement opportunity". This is the most recent review prior to her termination.

As Digger notes, however, the economic crisis hit the housing industry in late 2007 and early 2008. This downturn caused Digger to re-evaluate its workforce. While a performance review can be relevant to the question of whether an employee is meeting the employer's legitimate expectations, a performance review alone cannot "demonstrate the adequacy of performance at the crucial time when the employment action is taken". Dear v. Shineski, 578 F.3d 605, 610 (7th Cir. 2009)(quoting Fortier v. Ameritech Mobile Communs., 161 F.3d 1106, 1112 (7th Cir. 1998)).

The Youngs acknowledge having some "discipline issues" in their files. They have failed to address the numerous complaints about their work and efficiency that could have caused particular problems in an economic downturn. It is undisputed that the Youngs received assistance from other employees because they could not get their duties finished in time. At the time Digger made the decision to not rehire the Youngs, Digger needed to streamline its workforce and needed employees that it could rely upon to finish the job. Clearly, the Youngs did not meet these legitimate expectations in light of Digger's need to reduce its workforce due to the economic crisis it was facing at the time.

Even if the Youngs could show that they were meeting legitimate expectations, they have

8

not shown that similarly situated younger employees were treated better. It is undisputed that

Kristin Yoder and Amanda Meija were younger than the Youngs and are currently still employed

with Digger. However, it is also undisputed that both of these employees had responsibilities

beyond the responsibilities of the Youngs in their respective positions. Yoder and Meija also

kept their responsibilities as they took over the responsibilities of the Youngs when the Youngs

were laid off. Digger correctly notes that the undisputed evidence shows that both of these

employees had significantly more responsibility than the Youngs and better performance. While

a similarly situated employee "need not be identical," such an employee must have been

comparable in all material respects. Amrhein v. Health Care Service Corp., 2008 U.S. App.

Lexis 21828, *12 (7th Cir. 2008). This typically means that the alleged comparator held the same

type of job, reported to the same supervisor, was subject to the same standards and rules, had

comparable experience and qualifications, and engaged in the same conduct without being

subject to the same level of discipline. Brummett v. Sinclair Broad Group, Inc., 414 F.3d 686,

692-93 (7th Cir. 2005). As the comparators in this case had significantly more responsibilities

and no discipline issues, it is clear that they are not similarly situated to the Youngs. As the

Youngs have not met the last two elements of a prima facie case of age discrimination, they

cannot prevail on their claim.

In support of their race discrimination claims, the Youngs rely on the arguments above

with respect to whether they were meeting legitimate expectations. As the court has already

found that the Youngs have not presented prima facie evidence that they were meeting legitimate

expectations, their race claims fail as well. However, in an abundance of caution, the court will

proceed to discuss the other arguments presented by the race claims.

A major point of dispute is whether "non-Amish" constitutes a protected class under Title VII and Section 1981. "Race" has been defined broadly by the Seventh Circuit to include "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006). More recently, the Seventh Circuit has defined a "racial group as the term is generally used in the United States today as a group having a common ancestry and distinct physical traits." Abdullahi v. Prada, 520 F.3d 710, 712 (7th Cir. 2008). The Supreme Court has held that Jewish individuals classify as a separate protected "race" under 42 U.S.C. § 1982. Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617 (1987). The Youngs argue that a parallel can be drawn between Jewish individuals and the Amish. The Youngs further argue that if the Amish could be considered a distinct race then "non-Amish" is also a distinct race. Mr. Young is a Baptist and Mrs. Young is a Methodist. Both the Youngs testified that they do not believe they were discriminated against because they are Baptist or Methodist. Rather, the Youngs claim they were discriminated against because they are not Amish.

There is simply no precedent for finding that the Amish (or non-Amish) are a distinct race. They are not comparable to Jews because Jews have a distinct ancestral, cultural and historical background. Jews have been regarded as a separate race for many, many years. While the Amish are obviously a separate religious group, there is nothing that warrants classifying them as a separate racial group.

The Youngs claim that "non-Amish" is a protected religious group. Again, there is simply no precedent to support this proposition. Additionally, the Youngs' argument lacks common sense. Being "non-Amish" is not an insular group singled out for discrimination, and

is thus not within the categories the discrimination laws were designed to protect. Moreover, as

it is clear that the Youngs were not meeting legitimate expectations and that there are no

similarly situated persons who were treated more favorably, the Youngs have not set forth a

prima facie case with respect to their race and religious discrimination claims.

In any event, even if the Youngs had set forth a prima facie case Digger has set forth a

legitimate business reason for terminating the Youngs, as discussed earlier in this order. This

showing of a legitimate reason for their termination requires the Youngs to present evidence that

the reason is pretextual. Pretext means that the reason for the adverse action is a lie and the real

reason is based on unlawful discriminatory motives. Chism v. Con-Way Freight, Inc., 2009 U.S.

Dist. Lexis 88202, *54 (N.D. Ind. Sept. 24, 2009); Forrester v. Rauland-Borg Corp., 453 F.3d

416, 419 (7th Cir. 2006). There are no set parameters in proving pretext, but as a general matter

pretext can be shown by demonstrating that: (1) the proffered reason is factually baseless; (2) the

proffered reason is not the actual motivation for the adverse employment action; or (3) the

proffered reason is insufficient to motivate the adverse action. Johnson v. City of Fort Wayne,

91 F.3d 922, 931 (7th Cir. 1996).

The Youngs argue that pretext is shown because Digger allegedly made

misrepresentations of material facts to the EEOC. The Youngs first state that Digger

misrepresented that Everett Hochstetler, who is Amish, hired Mr. Young when actually Floyd

Bontrager hired Mr. Young. Digger admits it made a mistake in its EEOC report, but argues that

this mistake was not meant to cover up discriminatory intent and, in fact, both Hochstetler and

Bontrager are Amish. Digger states that the mistake was made because Mr. Hochstetler was a

vice president at the company and often involved in the hiring process. Clearly, Digger is

correct that this mistake is not evidence that Digger tried to cover up the truth as the truth was that Mr. Young was hired by an Amish person.

The Youngs also claim that Digger incorrectly identified the person who terminated them. Digger informed the EEOC that Tom Hellinga, a Catholic, terminated the Youngs when in fact, Loren Graber, in consultation with Everett Hochstetler terminated the Youngs. As Digger points out however, the statement is nevertheless true, because Hellinga is a Catholic and he initially told Mr. Young that they would have to lay off employees, and Loren Graber (who is also non-Amish), made the final decision to not hire back the Youngs. Clearly, there is nothing in the statement that shows discriminatory intent.

Next, the Youngs take issue with Digger's denial that the Mr. Young was replaced by a younger Amish female, and claim that Mr. Young was replaced by Kristen Yoder, who is a younger Amish female. As Digger explains, this is not a false statement, but a statement under contention. That is, Digger disputes that Kristen Yoder replaced Mr. Young, but acknowledges that Kristen Yoder absorbed his job responsibilities while keeping her previous job responsibilities. According to Digger, Yoder did not replace Mr. Young's position because she already worked in the department and continued with all of hr previous responsibilities.

The Youngs also take issue with Digger's denial that it hired four significantly younger Amish women since Mr. Young's termination for positions similar to Mr. Young's. However, the evidence shows that Mr. Young handled only work in the samples department and Digger did not have any new hires in the samples department. Moreover, it is undisputed that Digger decreased the total number of employees in the vinyl department in 2008 and has never rehired to previous levels. Again, it is clear that the statement made to the EEOC was not made only for

12

pretext and to hide discrimination.

Next, the Youngs claim that Digger offered shifting reasons for their terminations, which they perceive as showing pretext. The Youngs point out that in their termination letters they were told that they were being terminated due to the need to "scrutinize manpower resources." In its position statement to the EEOC Digger stated that there were two reasons for the terminations, the economic downturn and the Youngs' poor performance. Later, in depositions taken for this case, Hochstetler testified that the main reason the Youngs were terminated was because of their work performance and that the economy was only a partial reason. The Youngs claim that these facts create an inference of unlawful intent.

Digger explains as follows. Digger experienced a severe downturn in business due to the overall economic climate and the condition of the housing market. Due to this downturn, Digger simply could not continue to employ as many people as it had in the past. Although prior to the downturn the Youngs may have met the necessary expectations of Digger during the economic boom in the housing industry which preceded the crash in the market, the economic conditions at the time the Youngs were not rehired required Digger to reduce its workforce and to be more selective in the employees that it kept. In a nutshell, although the adverse decision was made based on the Youngs' job performance, this decision was made in the larger context of the poor economic environment where the number of employees had to be cut.

Digger also points out that the Youngs have not provided any evidence that Digger did not believe that the Youngs lacked the efficiency to do well in the streamlined company. Any pretext determination is concerned with "whether the employer honestly believes in the reasons it offers," not whether it was correct in all of its assertions. McCoy v. WGN Continental

13

Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992).

As the Youngs have not set forth a prima facie case on any of their discrimination claims, and have not rebutted Digger's legitimate business reasons for terminating them, summary judgment will be granted in favor of Digger on all the discrimination claims.

As noted earlier, the Youngs have also brought state law claims alleging breach of express contract, promissory estoppel and negligent misrepresentation. Digger argues that the Youngs can prove no set of facts to support their state law claims. Digger maintains that the Youngs were employees at will, without any express contract for employment and that their failure to be rehired comports with Indiana law. The relationship between an employer and employee is contractual and arises from an express or implied contract of employment. Miller v. State, 285 N.E.2d 843, 847 (Ind. Ct. App. 1972). Historically, Indiana has recognized two basic forms of employment: employment for a definite or ascertainable term and employment at will. Orr v. Westminster Village North, 689 N.E.2d 712, 717 (Ind. 1997). The determination of whether an employee is at will is a legal determination. Eck & Assoc. v. Alusuisse Flexible Packaging, Inc., 700 N.E.2d 1163, 1167 (Ind. Ct. App. 1998). Indiana presumes employment is at will, which employment may be terminated by either party at will, with or without reason. Orr, 689 N.E.2d at 717. The presumption of at will employment is strong, and Indiana courts are disinclined to adopt broad and ill-defined exceptions to the employment at will doctrine. Id.

The Youngs argue that Mr. Hellinga's notation that the Youngs were to be called back on "April 1" created an express contract for employment. However, "[u]nder Indiana law, if the tenure of employment is indefinite or cannot be determined from the terms of the contract, the employment is one at will and may be terminated at any time at the election of either party; the

14

employer may terminate the employment for any cause or for no cause at all." Rice v. County Bd. of Com'rs, 472 N.E.2d 213, 214 (Ind. Ct. App. 1984). For an employment contract for a term to be enforceable, there must be a promise on the part of the employer that employment will continue for a definite period of time and a promise on the part of the employee to continue in employment. Bochnowski v. Peoples Fed. Sav. & Loan Ass'n, 571 N.E.2d 282, 284 (Ind. 1991).

Although the Youngs argue that Mr. Hellinga's notation "call back date April 1" created notice of a clear intent that the Youngs would be hired back under all conditions, the undisputed facts show that Mr. Hellinga communicated that this would be the earliest possible date that the Youngs would potentially be rehired by Digger. This court agrees with Digger that this one line is simply insufficient for the creation of any type of contractual relationship whether actual or implied. As there was never a promise to rehire the Youngs, and there is no evidence of any false information being communicated to the Youngs, there cannot be a claim for breach of contract, implied contract, promissory estoppel or negligent misrepresentation. Accordingly, summary judgment will be granted in favor of Digger on the state law claims.

Conclusion

On the basis of the foregoing, Digger's motion for summary judgment [DE 34] is hereby GRANTED.


Entered: October 5, 2010.


                                                    s/ William C.  Lee
                                                    William C. Lee, Judge
                                                    United States District Court